# EXHIBIT A

NOV -9 2020

## Commonwealth of Massachusetts

MIDDLESEX, SS.

TRIAL COURT OF THE COMMONWEALTH
SUPERIOR COURT DEPARTMENT
CIVIL DOCKET NO. 2081CV02096

AMY S. GERMAIN-POSEY, ET. AL., PLAINTIFF(S),

V.

U.S. BANK, NATIONAL ASSOCIATION, DEFENDANT(S)



### SUMMONS

THIS SUMMONS IS DIRECTED TO U.S. BANK, N.A. (Defendant's name)

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the MIDDLESEX COUNTY SUPERIOR Court. **YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1. **You must respond to this lawsuit in writing within 20 days.** If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

2. **How to Respond.** To respond to this lawsuit, you must file a written response with the court **and** mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:
    a. Filing your **signed original** response with the Clerk's Office for Civil Business, MIDDLESEX Court, 200 TRADECENTER DRIVE, WOBURN, MA 01801 (address), by mail or in person, **AND**
    b. Delivering or mailing a **copy** of your response to the Plaintiff's Attorney/Plaintiff at the following address: HOFFMAN LAW, 67 FOREST STREET - SUITE 262, MARLBOROUGH, MA 01752

3. **What to include in your response.** An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your Answer or in a written demand for a jury trial that you must send to the other side and file with the court no more than 10 days after sending your Answer. You can also respond to a Complaint by filing a **"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12.** If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at www.mass.gov.courts/case-legal-res/rules of court.

4. **Legal Assistance.** You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

5. **Required information on all filings:** The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. Judith Fabricant, Chief Justice on _____, 20___.

*[signature]*

Michael A. Sullivan
Clerk-Magistrate

Note: The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

## PROOF OF SERVICE OF PROCESS

I hereby certify that on _____, 20___, I served a copy of this summons, together with a copy of the complaint in this action, on the defendant named in this summons, in the following manner (See Mass. R. Civ. P. 4(d)(1-5)):

*By mailing the above referenced documents, per M.G.L. c. 223A §3 and MRCP Rule 4(e)(3), to the Defendant, via certified mail Return Reciept Requested and Defendant signed to confirm reciept. The Defendant or Defendants Agent signed for the documents on →*

Dated: _____, 20___    Signature: _____

*The documents so mailed, were mailed to Defendant's Corporate Headquarters at:*
*U.S. BANK*
*800 NICOLLET MALL*
*MINNEAPOLIS, MN 55402-7020*

N.B.   TO PROCESS SERVER:

PLEASE ENTER THE DATE THAT YOU MADE SERVICE ON THE DEFENDANT IN THIS BOX - BOTH ON THE ORIGINAL SUMMONS AND ON THE COPY OF THE SUMMONS SERVED ON THE DEFENDANT.

*SERVICE WAS MADE UPON DEFENDANT UPON:*

*[boxed: DATE DEFENDANT SIGNED FOR RECIEPT OF DOCUMENTS , 20___]*

| CIVIL TRACKING ORDER<br>(STANDING ORDER 1- 88) | DOCKET NUMBER<br>2081CV02096 | Trial Court of Massachusetts<br>The Superior Court |
|---|---|---|
| CASE NAME:<br>Germain-Posey, Amy S et al vs. U.s. Bank, National Association | | Michael A. Sullivan, Clerk of Court<br>Middlesex County |
| TO:<br>Devin Leigh Hoffman, Esq.<br>Hoffman Law<br>67 Forest St<br>Suite 262<br>Marlborough, MA 01752 | | COURT NAME & ADDRESS<br>Middlesex County Superior Court - Woburn<br>200 Trade Center<br>Woburn, MA 01801 |

## TRACKING ORDER - F - Fast Track

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

**STAGES OF LITIGATION**          **DEADLINE**

| | SERVED BY | FILED BY | HEARD BY |
|---|---|---|---|
| Service of process made and return filed with the Court | | 11/27/2020 | |
| Response to the complaint filed (also see MRCP 12) | | 12/28/2020 | |
| All motions under MRCP 12, 19, and 20 | 12/28/2020 | 01/25/2021 | 02/24/2021 |
| All motions under MRCP 15 | 12/28/2020 | 01/25/2021 | 02/24/2021 |
| All discovery requests **and depositions** served and non-expert depositions completed | 06/24/2021 | | |
| All motions under MRCP 56 | 07/26/2021 | 08/23/2021 | |
| Final pre-trial conference held and/or firm trial date set | | | 12/21/2021 |
| Case shall be resolved and judgment shall issue by | | | 08/29/2022 |

The final pre-trial deadline is **not the scheduled date of the conference**. You will be notified of that date at a later time.
Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.
This case is assigned to

| DATE ISSUED | ASSISTANT CLERK | | PHONE |
|---|---|---|---|
| 08/31/2020 | Dia S Roberts-Tyler | | (781)939-2745 |

Date/Time Printed: 08-31-2020 09:22:02        SCV026\ 08/2018

| CIVIL ACTION COVER SHEET | DOCKET NUMBER | Trial Court of Massachusetts The Superior Court |
|---|---|---|
| **PLAINTIFF(S):** Amy S. Germain-Posey; Michael E. Posey <br> **ADDRESS:** 6 State Street - Apt J. <br> Leominster, MA 01453 | | **COUNTY** Middlesex |
| **ATTORNEY:** Devin L. Hoffman, Esq. <br> **ADDRESS:** 67 Forest Street - Suite 262 <br> Marlborough, MA 01752 <br> **BBO:** 693216 | **DEFENDANT(S):** U.S. Bank, National Association <br> **ADDRESS:** 800 Nicollet Mall <br> Minneapolis, MN 55402-7020 | |

**TYPE OF ACTION AND TRACK DESIGNATION (see reverse side)**

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| B04 | G.L. 93A, Personal Injury, other Torts | F | [X] YES   [ ] NO |

*If "Other" please describe:

Is there a claim under G.L. c. 93A?   [X] YES   [ ] NO
Is this a class action under Mass. R. Civ. P. 23?   [ ] YES   [X] NO

**STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A**

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff's counsel relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

**TORT CLAIMS**
(attach additional sheets as necessary)

A. Documented medical expenses to date:
 1. Total hospital expenses ................................................................................................ $12,500.00
 2. Total doctor expenses .................................................................................................. $20,000.00
 3. Total chiropractic expenses ........................................................................................ $
 4. Total physical therapy expenses ................................................................................ $
 5. Total other expenses (describe below) ...................................................................... $
        8/28/2020                                                                                             Subtotal (A): $
B. Documented lost wages and compensation to date ................................................... $180,000.00
C. Documented property damages to date ..................................................................... $45,000.00
D. Reasonably anticipated future medical and hospital expenses .. RECEIVED ........ $
E. Reasonably anticipated lost wages .............................................................................. $525,000.00
F. Other documented items of damages (describe below) ................................. NH ... $110,000.00
Mental anguish/distress, loss of enjoyment, etc ...

G. Briefly describe plaintiff's injury, including the nature and extent of injury:
Personal injury-neligence + 93A hazardous/negligent conditions in home, led to personal injury and loss of property of plaintiff

TOTAL (A-F): $892,500.00

**CONTRACT CLAIMS**
(attach additional sheets as necessary)

[ ] This action includes a claim involving collection of a debt incurred pursuant to a revolving credit agreement. Mass. R. Civ. P. 8.1(a).
Provide a detailed description of claim(s):

TOTAL: $

Signature of Attorney/ Unrepresented Plaintiff: X _[signature]_    Date: Aug 28, 2020

**RELATED ACTIONS:** Please provide the case number, case name, and county of any related actions pending in the Superior Court.

**CERTIFICATION PURSUANT TO SJC RULE 1:18**

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

Signature of Attorney of Record: X _[signature]_    Date: Aug 28, 2020

# Commonwealth of Massachusetts

### THE TRIAL COURT
### SUPERIOR COURT DEPARTMENT

**MIDDLESEX, SS.**　　　　　　　　　　　　　　**MIDDLESEX SUPERIOR COURT DOCKET NO. -**

Amy S. Germain-Posey;
Michael E. Posey
　　　　　PLAINTIFF

**COMPLAINT AND JURY DEMAND**

8/28/2020

v.

U.S. Bank, National Association　　　　　　NH　　**RECEIVED**
　　　　　DEFENDANTS

## PARTIES

1. Plaintiff, Amy S. Germain-Posey (hereinafter "Ms. Germain-Posey"), is an individual residing in Leominster, Worcester County, Massachusetts.

2. Plaintiff, Michael E. Posey (hereinafter "Mr. Posey"), is an individual residing in Leominster, Worcester County, Massachusetts.

3. Defendant, U.S. Bank National Association (hereinafter "US Bank"), is a bank, with corporate headquarters located at 800 Nicollet Mall, Minneapolis, MN, 55402-7020.

4. The Corporation Trust Company is a company acting as US Bank's Registered Agent, located at Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware, 19801-1196.

5. Omega Mortgage Corporation (hereinafter "Omega Corp") is a business with a corporate address located at 333 Boston Post Road, Sudbury, MA, 01776.

6. Ocwen Loan Servicing, LLC (hereinafter "Ocwen") is a business located at 1661 Worthington Road, Suite 100, West Palm Beach, FL, 33409; Ocwen acted as servicer for US Bank National Association as Trustee RALI2006QS2 in relation to the loan originally taken out by Ms. Germain-Posey's parents (see Paragraph 7).

## FACTS

7. On November 28, 2005, Omega Corp granted Ms. Germain-Posey's parents, Gerald E. Germain and Helen T. Germain, a loan of three hundred sixty-three thousand seven hundred dollars and no cents ($363,750.00), loan NO: 7700148636, secured by a mortgage for the property located at 191 Hartwell Avenue, Littleton, Middlesex County, Massachusetts, 01460 (hereinafter "the Property").

8. On October 19, 2010, Gerald E. Germain died.

9. On October 20, 2010, Ms. Germain-Posey moved into the Property, to care for mother, Helen T. Germain, who was advanced in years and whose health was failing.

10. Helen T. Germain passed away on September 23, 2013.

11. Defendant US Bank was aware of the death of Helen T. Germain.

12. Ms. Germain-Posey continued to live in the Property, until she moved out in April of 2017.

13. During Ms. Germain-Posey's Occupancy, the Property underwent foreclosure proceedings, initiated by US Bank.

14. US Bank obtained judgment for foreclosure on March 6, 2012, becoming owner of the Property. On this date, ownership and liability for the Property shifted from the Estate of Helen T. Germain (see Paragraph 10) to US Bank.

15. September 3, 2013, Ms. Germain-Posey and Mr. Posey (hereinafter referred to collectively as "the Poseys" or "the Plaintiffs") were married.

16. By the beginning of 2013 Ms. Germain-Posey began suffering a number of different health issues, some physical and some mental/behavioral, including, among others, depression and fatigue.

17. Ms. Germain-Posey, for some time, attributed her failing health to the deaths of her father and mother, respectively.

18. Mr. Posey, a military veteran who suffers from posttraumatic stress disorder (hereinafter "PTSD"), moved into the Property shortly after their marriage in 2013 and continued to reside there until August of 2016.

19. Although Mr. Posey resided at the Property for approximately three years (see Paragraph 18), he would occasionally travel and be away from the Property, due to his work with veterans.

20. Within a few months of moving into the Property, Mr. Posey began to exhibit uncharacteristic behavior and health issues, including depression, weight gain, lethargy, and a host of other symptoms and issues; for some time, Mr. Posey attributed this to his PTSD.

21. By August of 2016 the health of both Ms. Germain-Posey and Mr. Posey had deteriorated significantly and hospital and doctor visits were routine for both, especially for Ms. Germain-Posey, who had lived in the Property longer than Mr. Posey.

22. On November 17, 2017, the Defendant, US Bank, granted Giannetta RE and Construction Corp. a quitclaim deed in consideration of $304,000.00 (three hundred four thousand dollars)(Doc.#190030, BK/PG 70273/382) for the Property.

23. During its ownership of the Property, the Defendant, US Bank, was repeatedly put on notice of the conditions inside the Property, but took no action whatsoever.

24. On March 18, 2014 the Littleton Fire Department (hereinafter "Littleton FD") responded to the Property to investigate black smoke emitting from the boiler roof-vent. Littleton FD determined that the boiler was unsafe and ordered its use to be discontinued, eliminating the Property's only source of heat.

25. On March 18, 2014, while conducting its investigation of the boiler, at the Property, Littleton FD discovered that raw sewage was seeping into the basement hallway, the result of outdated and defective plumbing.

26. Upon completing its inspection of the Property, Littleton FD notified the Littleton Board of Health (hereinafter "Board of Health") explaining, in detail, the health concerns existing at the Property.

27. Between 2014 and 2017 the Board of Health conducted three (3) inspections of the Property. Each report provided an exhaustive list of violations, and – together – they show that the hazardous and deleterious effects inside the Property were increasing. In its first report, the Board of Health listed the number of inhabitable rooms at eight (8) and in its last report this number had decreased to (3).

28. During this same period of time, mold present in the basement of the Property had proliferated and had grown from a minor presence in the basement to covering the walls of the entire Property. All of the Posey's personal possessions therein also came to be covered in mold.

29. The Defendant, US Bank, was notified by the Board of Health of the hazardous conditions present, each time an inspection was conducted, but took no remedial actions, despite its knowledge that the Property was occupied.

30. In approximately March of 2017 Ms. Germain-Posey and Mr. Posey, after having suffered myriad of unexplained illnesses and health issues which had gradually become more severe, began to suspect that the conditions present inside the Property could possibly be related to their health issues.

31. By March of 2017, Ms. Germain-Posey was regularly consulting her primary care physician and other healthcare practitioners to address her many health problems. Although he was not experiencing symptoms as severe as Ms. Germain-Posey, Mr. Posey too regularly sought medical care. Nevertheless, answers and diagnosis were not forthcoming.

32. Having taken many battery of tests, without receiving a conclusive diagnosis, Ms. Germain-Posey, in her quest to resolve her health issues, hired a company, Gordon Mycology Laboratory, Inc. (hereinafter "GML"), and on June 2, 2017 GML conducted an inspection of the Property, followed by laboratory analysis, and issued a report (hereinafter "the Report").

33. The Report noted that numerous strands of toxic mold spores were identified as being present in the Property.

34. Based on the moisture and mold conditions present, all rooms of the Property were characterized Condition Three by the Report, the most severe condition under the industry standard of Mold Remediation.

35. In addition to the severe presence of toxic mold, the Report noted that animal, rodent and insect infestations were found throughout the Property, including animal feces and other material hazardous to human health.

36. In the Report, GML's final conclusion stated that the dispersed mold spores, rodent/insect infestation, settled dust and debris rendered the Property uninhabitable.

37. Armed with the specific findings of the Report, Ms. Germain-Posey was able to inform her doctor and healthcare practitioners of some of the possible hazardous and toxic material and substances that might have caused her severe health issues, and from approximately September until the end of December 2017 Ms. Germain-Posey again underwent a battery of tests. These tests later conclusively showed the presence of toxic mold in Ms. Germain-Posey's blood, the same types of toxic mold present in the Report, and multiple health care practitioners have now attributed her significant decline in health and myriad of previous and current health issues to the ingestion of these substances.

38. For an extended period of time, Ms. Germain-Posey was exposed to the hazardous atmosphere existent inside the Property, which was comprised of extreme toxic mold, airborne sewage, and animal feces (among other hazardous substances). As a result, Ms. Germain-Posey has suffered severe medical injuries leaving her permanently debilitated.

39. Ms. Germain-Posey's extensive medical records, which continue to accumulate, indicate that, to date, she has suffered, among other things, infections, fatigue, depression, fungus and mold growing on her body and skin, nausea, perpetual difficulty breathing, Farmer's

lung, Lyme borreliosis, small fiber neuropathy, Bartonellosis, brain fog, and Babesiosis. These injuries have caused Ms. Germain-Posey severe physical and emotional pain and suffering, and have ruined her ability to enjoy or relish a comforting life.

40. Ms. Germain-Posey's injuries have caused and continue to cause her an inability to function as a normal person, preventing her from being able to work for an extended period of time and – at times – from being able to do any work at all. As a result of her injuries, Ms. Germain-Posey has been unable to perform full-time employment and has suffered a significant loss of wages. The severity of her injuries have rendered her unable to completely provide for herself.

41. Because of her diagnosed sensitivity to the hazardous materials present in the Property and her continued weakened medical state, Ms. Germain-Posey, as directed by her doctors, was unable to salvage any of her personal possession, from the Property, that had become contaminated.

42. The mold and other hazardous substances present at the Property had infiltrated and infested the fabrics, wickers, and coverings of everything present in the Property. All of Ms. Germain-Posey's furniture, personal belongings, clothes, appliances, and all other such personal possessions at the property had to be discarded.

43. For an extended period of time, Mr. Posey was exposed to the hazardous atmosphere existent inside the Property, which was comprised of extreme toxic mold, airborne sewage, and animal feces (among other hazardous substances).

44. As a result of his exposure to the toxic and hazardous conditions that were allowed to persist and escalate in the Property, Mr. Posey has suffered severe medical injuries,

including, among others, fatigue, anxiety, depression and the deterioration of his respiratory system.

45. Mr. Posey's medical records indicate the cause of his medical injuries to be the result of his exposure to the hazardous and toxic atmosphere and conditions that were allowed to persist and escalate by the Defendant, US Bank.

46. Mr. Posey, as with Ms. Germain-Posey, was forced to discard all of his personal possessions, including clothing, furniture, appliances, and all other such personal possessions, that had become contaminated as a result of its exposure to the toxic and hazardous conditions present in the Property.

47. A Demand Letter was mailed to the Defendant, US Bank, on January 15, 2020, in accordance with M.G.L. c. 93A § 9, but the Defendant made no "reasonable offer" nor any communication whatsoever.

## COUNT I: VIOLATION OF M.G.L. c. 93A § 9 – MASSACHUSETTS CONSUMER PROTECTION LAW

48. Plaintiffs restate and re-allege all preceding allegations as if fully recited herein.

49. At all relevant times hereto, the Defendant was engaged in trade or commerce.

50. M.G.L. c. 93A § 2(a) declares unlawful any "unfair or deceptive acts or practices in the conduct of any trade or commerce."

51. The Defendant owned the Property, solely, approximately between the years of 2012 and 2017, and was aware that tenants resided therein.

52. US Bank was aware of the hazardous, toxic, dangerous, and inhumane conditions present in the Property, or should have been, and took no remedial steps whatsoever.

53. At no time, during its ownership, did US Bank seek to inspect or examine the interior of the Property.

54. The only efforts made by the Defendant, with regard to the Property, were its efforts to perform summary process on Ms. Germain-Posey and Mr. Posey.

55. With full knowledge that the Property (its property) was inhabited by the Plaintiffs and that it was rife with hazardous and dangerous conditions needing immediate repair and attention, the Defendant did nothing. No attempts were made by the Defendant to bring the Property within even the most base and minimal standards of health and safety for living conditions.

## COUNT II: NEGLIGENCE

56. Plaintiffs restate and re-allege all preceding allegations as if fully recited herein.

57. As stated supra., the Defendant owned the premises, the Property, during the overwhelming majority of time that the Plaintiff's resided therein, and were exposed to the harmful conditions.

58. The Defendant had a duty to take reasonable care in its maintenance and care of the Property.

59. The Defendant breached its duty, by failing to exercise reasonable care, or any care whatsoever, in its maintenance and ownership of the Property.

60. As a direct and proximate result of the Defendant's breach of its duty, the Plaintiff's suffered severe injury, physically and emotionally, and suffered monetary loss.

## COUNT III: LOSS OF CONSORTIUM

61. Plaintiffs restate and re-allege all preceding allegations as if fully recited herein.

62. As noted in *Lombardo* - "Either spouse has a claim for loss of consortium show to arise from personal injury of the other spouse caused by … a third person." *Lombardo v. D.F. Frangioso & Co., Inc.* 359 Mass. 529 (1971).

63. As stated supra., the Plaintiffs, Ms. Germain-Posey and Mr. Posey were married at the time they resided in the Property and sustained their injuries, injuries caused by the Defendant's negligence and statutory violations.

64. Defendant's failure to properly maintain the Property led to each Plaintiff's injuries, and this – in turn – directly injured the Plaintiffs' love, affection, and companionship.

## COUNT V: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

65. Plaintiffs restate and re-allege all preceding allegations as if fully recited herein.

66. In order to succeed on a claim of intentional infliction of emotional distress, a plaintiff must show (1) that a defendant intended to cause or should have known that his/her actions were likely to cause emotional distress; (2) engaged in conduct that was extreme and outrageous; (3) this extreme and outrageous conduct caused the plaintiff to suffer injury; and (4) the plaintiff suffered extreme emotional distress. See *George v. Jordan Marsh Co.*, 359 Mass. 244 (1971).

67. The Defendant, US Bank, knew or should have known that the extreme conditions allowed to persist and escalate in the Property were likely to cause emotional distress.

68. The Defendant's conduct was extreme and outrageous, in leaving the Plaintiffs to reside in hazardous, feces-ridden, property.

69. The Defendant's conduct did – indeed – cause the Plaintiffs severe injury.

70. The Plaintiffs suffered, and – in the case of Ms. Germain-Posey – continue to suffer, extreme emotional distress.

## **COUNT VI: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

71. The Plaintiffs restate and re-allege all preceding allegations as if fully recited herein.
72. To prevail in a claim of negligent infliction of emotional distress, a plaintiff must prove: the negligence of the defendants; that the negligence caused emotional distress; that the emotional distress either caused or was caused by physical harm or injury; that the harm or injury was manifested by objective symptomatology; and that the distress was foreseeable. *See Payton v. Abbott Labs.*, 386 Mass. 540, 557 (1982); *Ferriter v. Daniel O'Connell's Sons*, 381 Mass. 507 (1980).
73. As stated supra., the Defendant was negligent, this negligence caused the Plaintiffs emotional distress, the emotional distress was caused by physical injury, and the injuries sustained were manifested by objective symptomatology.
74. It was foreseeaable that the Plaintiffs would suffer emotinal distress, as a result of residing in the midst of such toxic, hazardous, and unsanitary conditions.

**WHEREFORE**, the Plaintiffs respectfully requests that this Court grant the following relief:

1. Enter Judgment against Defendant;
2. Award Plaintiffs attorney fees, costs and expert witness fees;
3. Award compensatory damages for lost wages and benefits, physical illness, physical and emotional pain and suffering, emotional distress, anxiety, loss of enjoyment of life and out-of-pocket expenses or other financial losses, plus lawful interest.
4. Award Punitive and/or Multiple Damages pursuant to G.L. c. 93A;
5. Order the Defendant to pay prejudgment interest from the date of the filing of this complaint; and
6. Award such other relief as the Court deems fair and just.

## DEMAND FOR JURY

Plaintiffs demand a trial by jury on all issues so triable.

Date: August 28, 2020

Respectfully Submitted.
Amy S. Germain-Posey
Michael E. Posey
Plaintiffs
By their Attorney,

Devin L. Hoffman, Esq.
Attorney for Plaintiff
HOFFMAN LAW
67 Forest Street – Suite 262
Marlborough, MA  01752
BBO# 693216
Phone: (978) 848-2041
Fax: (978) 849-8870
devin@dhoffmanlaw.com






**CERTIFIED MAIL®**

7019 0700 0001 1082 8358

U.S. POSTAGE PAID
FCM LG ENV
MARLBOROUGH, MA
01752
NOV 06, 20
AMOUNT
$8.00
R2304M111319-07



**HOFFMAN LAW**
67 Forest Street - Suite 202
Marlborough, MA 01752

U.S. Bank, National Association
800 Nicollet Mall
Minneapolis, MN
55402-7020